Filed 6/27/13  P. v. Allen CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHELLE LYNN ALLEN,<br><br>    Defendant and Appellant. | D061498<br><br><br><br>(Super. Ct. No. SCD236584) |

APPEAL from a judgment of the Superior Court of San Diego County, Desiree A. Bruce-Lyle, Judge.  Affirmed with directions.

Teresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Michelle Lynn Allen (Allen)[1] of one count of corporal injury to her spouse Larry Allen, Jr. (Larry)[2] (count 2: Pen. Code, § 273.5, subd. (a)) and one count of vandalism in an amount of $400 or more (count 3: Pen. Code, § 594, subds. (a), (b)(l)). As to count 2, the jury found true allegations that in committing the offense, Allen personally used a deadly weapon (scissors) within the meaning of Penal Code sections 12022, subdivision (b)(1), and 1192.7, subdivision (c)(23). The jury found Allen not guilty of assaulting Larry with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) as charged in count 1. The court sentenced Allen to an aggregate prison term of three years eight months.

Allen appeals, contending (1) the court prejudicially abused its discretion in excluding evidence of a November 2010 prior domestic violence incident she claims would have supported a finding of reasonable self-defense in the current case; (2) the court prejudicially abused its discretion in admitting evidence of her 2000 prior felony conviction of unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a)); (3) the prosecutor committed prejudicial misconduct by impermissibly vouching for the veracity of the complaining witness (Larry) and characterizing Allen as a liar; (4) the

---

[1] It was established at the preliminary hearing held on October 4, 2011, that the defendant's true name is "Michelle Allen." Inconsistencies in the record as to her true name remain, however. The complaint, the probation report, and the abstract of judgment identify defendant as "Michelle Lynn Mills" also known as "Michelle Allen." In light of these inconsistencies, we will remand the matter to the trial court for verification of defendant's true name and, if necessary, correction of the abstract of judgment in that regard.

[2] As Allen and the victim share the same the last name, we refer to the victim by his first name. We intend no disrespect.

2

court's cumulative errors denied Allen her due process right to a fair trial; and (5) the court abused its discretion by denying her request for probation. We affirm the judgment.

FACTUAL BACKGROUND

A. *The People's Case*

Allen and her husband, Larry, who served in the military, were married for more than five years and were living together in September 2011 at the Marine Corps Air Station Miramar (Miramar). Larry had just come home after spending months overseas on deployment. Allen and Larry had begun arguing about infidelity and whether they were going to get a divorce.

On September 15, 2011, the day after Larry got back from deployment, Allen and Larry began arguing and yelling at each other, and Larry decided to leave the house. After he went to the bedroom upstairs to pack his clothing, Allen came up behind him and stabbed him in the right shoulder with a pair of scissors. Larry testified he was shocked that Allen had stabbed him. Larry tried to grab the scissors and Allen stabbed him twice in the back and once in the hand. Larry testified he put Allen in a "bear hug" to restrain her and stop her from stabbing him. In the struggle, when he let her go to try and grab the scissors, Allen stabbed him in the hand. Larry was finally able to restrain Allen and take the scissors away from her. He did not hit, kick, or injure her. After Allen stopped trying to stab Larry, she asked him not to leave and the two made up.

The next day, September 16, Allen and Larry argued again. Larry decided to leave because Allen was becoming violent and mixing her prescription pills with alcohol. Larry testified that, either later that day or the next day, he returned home and found his

3

flat-screen TV, laptop computers, PlayStation, and passport had been destroyed. When Larry went to get his cell phone, Allen handed it to him but it was broken into pieces. As Larry started to walk away, Allen got into his truck in the garage, backed up, and drove straight into his motorcycle, which was in front of the truck in the garage. Allen backed up and rammed the truck into the motorcycle a few more times. Allen then drove up to Larry, who had walked away from the house, apologized to him, and asked him to get in the truck so they could talk. When Larry refused, Allen became angry again and repeatedly tried to ram the car into the sidewalk in front of Allen. Larry got away by running in between some houses so that Allen could not drive after him. She had taken $500, the maximum she could withdraw from Larry's account. Larry went home to retrieve the money, but she refused to give it to him. Allen followed him, screaming, yelling, and cursing at him to give her back her phone. She caught up to him and ripped off his necklace. When Larry dropped the phones to find his necklace, Allen grabbed the phones and started walking back home. By this time, shortly before 11:00 p.m., a witness had already called the military police at Miramar and reported the incident as a possible domestic dispute.

Military police officers arrived at the house and saw Larry standing outside. Larry was calm and cooperative as the officers took his statement. Allen was drinking alcohol, acting irrationally at times, and displaying fluctuating moods. During the police investigation, Allen repeatedly fell to the floor, violently shaking as if she were having a seizure. She also threw herself into the front door, hitting her head on the door. On one of the occasions when Allen appeared to be having a seizure, an officer saw her pull her

4

phone out of her pocket, fiddle with it, and put it back in her pocket. Medics were called and tried to attend to her, but she refused treatment. Allen was agitated and at one point spontaneously said, "I did damage the items in the house and don't give a fuck. I stabbed him with scissors the other day too. And, yeah, I broke his phone."

B. *The Defense Case*

Allen testified she told Larry in December 2010 that she wanted a divorce because she found out he had been cheating on her. She planned to move after the divorce, but waited to file for divorce or to move because Larry left for deployment in February 2011 and returned on September 14 of that year.

Allen stated that there was domestic violence all throughout their marriage and that Larry had abused her and injured her in the past. She testified that on September 15, 2011, she drove Larry to the courthouse to file divorce papers, but Larry would not get out of the vehicle. After they argued about the divorce papers, Allen drove them home where they argued some more. Allen admitted she "cussed him out" during the argument and told him to get out of the house. According to Allen, Larry grabbed her, pinned her down, and punched her thighs, causing bruising. Pictures of her legs were shown to the jury.

Allen also testified that when she broke free of Larry's hold she ran to the kitchen and grabbed a pair of scissors because she was scared. She again told Larry to leave, picked up the cell phone, and went into the garage. Larry came out into the garage and placed Allen in a bear hug. She stated the scissors in her right hand scraped Larry's back. When Larry still would not let her go, she became scared since she could not get free and

5

knew Larry was trained in martial arts, and she hit him in the shoulder with the scissors to scare him and get him to let her go. Larry grabbed the scissors and left the garage. He ended up staying at the residence that night, and they had sex.

Allen testified that they argued again the next day, September 16, 2011, over Larry's refusal to sign the divorce papers and allow her to move to Atlanta. Allen became angry, got a hammer, and began breaking things inside the house, including the television and Larry's play station, laptop, cell phone, and iPod. Larry began laughing, she told him to leave, and he left.

On September 17, Allen and Larry argued again, and Larry went to the bachelor's quarters on base. He asked Allen to bring him some food, which she did, and then she went back to the house and began drinking because she was upset. Larry came back to the house and they began arguing. He was angry about the money she had taken. Larry took Allen's cell phone and the house phone, said he was going to call the police, and began walking away. Allen followed him to get her cell phone. She went back to the house after she retrieved the phones. Larry also returned and told her the police were coming.

Allen testified she was in the garage, angry, when she spoke to police. She admitted to the officers that she broke some items in the residence and that she cut Larry with scissors. However, she told them she had done so in self-defense. Allen also testified she takes medication for seizures and should not drink when she is taking the medication. She admitted the combination of alcohol and medication at times affects her emotions. She also admitted she was drinking during each of the incidents on September

6

15, 16, and 17, 2011.  She also stated she did not remember destroying Larry's motorcycle, but did not deny she did it.

## DISCUSSION

### I.  *EXCLUSION OF PRIOR DOMESTIC VIOLENCE EVIDENCE*

Allen first contends the court prejudicially abused its discretion in excluding evidence of a November 2010 prior domestic violence incident she claims would have supported a finding of reasonable self-defense in the current case.  We conclude she has forfeited this claim by failing to provide this court with an adequate record for review, and, thus, she has not met her burden of affirmatively demonstrating error.

### A.  *Background*

On direct examination, in response to Allen's testimony that she "didn't want to be with [Larry]" because of "all the stuff that happened" before he was deployed in February 2011, defense counsel asked her, "What happened before he left?"  The prosecutor objected on the ground of relevance, and the court sustained the objection.  Later that morning, the court discussed the matter with defense counsel and the prosecutor outside the presence of the jury during an unreported sidebar conference.

After the jury was excused for the morning break, the court addressed the matter on the record, stating:

> "[T]his morning we had a sidebar as [defense counsel] explored
> prior domestic violence issues.  The People objected, indicating it
> was not relevant.  So we had a sidebar.  And [defense counsel]
> indicated it was to show or lay a foundation for the self-defense
> defense that he was proffering.  The People objected and said unless
> it was recent events, it was not reasonable.  Upon the court's inquiry,
> [defense counsel] indicated the prior incident was in 2010,

7

November 2010. And the court indicated it was too far removed to be relevant to the [September 2011 incident]. And, therefore, the People's objection was sustained."

Allen's counsel argued that a November 2010 incident supported her self-defense argument:

> "Your Honor, I just wanted to add that my take on it was that when deciding if self-defense is reasonable, the jury is allowed to look at prior experiences that the witness has had and that someone who has been threatened or harmed by a person in the past is justified in acting more quickly or using additional force. And I thought it would help bolster [Allen's] testimony in light of the instructions should the Court grant the self-defense instruction. And I understand *there was a large gap of time*. However, he was on deployment from that period of time. *If you cut out the deployment, it is actually an incident that happened just prior to their contact.* She had contact with him right before deployment and then contact right after deployment. And that was my take on that. That's all." (Italics added.)

Noting that Larry's deployment was in February 2011 and the alleged prior incident was in November 2010, the court affirmed its prior ruling sustaining the prosecution's objection.

B. *Analysis*

In challenging the court's exclusion of evidence of the alleged prior domestic violence incident, Allen claims the court prejudicially abused its discretion because (1) "[e]vidence of Larry's prior domestic violence toward [her] was relevant to issues of [her] self-defense justification and to the jury's assessment of credibility"; (2) the evidence should not have been excluded on the ground the incident was too remote in time; and (3)

8

the court "erred in failing to conduct an analysis under Evidence Code[3] Section 352 which would have found evidence of the November, 2010 incident was more probative than prejudicial." Allen's claim is unavailing because she has forfeited the claim by failing to provide an adequate record for appellate review.

The legal principles that guide our analysis are well-established. The admissibility of evidence of prior incidents of domestic violence is subject to the sound discretion of the trial court, which will not be disturbed on appeal absent a showing of an abuse of discretion. (See *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138.)

"When a trial court denies a defendant's request to produce evidence, the defendant must make an offer of proof in order to preserve the issue for consideration on appeal." (*People v. Foss* (2007) 155 Cal.App.4th 113, 126 (*Foss*); § 354, subd. (a).) "'An offer of proof should give the trial court an opportunity to change or clarify its ruling and in the event of appeal would provide the reviewing court with the means of determining error and assessing prejudice. [Citation.] To accomplish these purposes an offer of proof must be *specific*. It must set forth the *actual evidence to be produced and not merely the facts or issues to be addressed and argued*.'" (*Foss*, *supra*, at pp. 127-128, quoting *People v. Schmies* (1996) 44 Cal.App.4th 38, 53, italics added.)

On appeal, the appellant must affirmatively demonstrate error because a judgment is presumed correct and all reasonable inferences are drawn in support of the judgment. (*People v. Garza* (2005) 35 Cal.4th 866, 881; *People v. Wader* (1993) 5 Cal.4th 610, 640;

---

3    Undesignated statutory references will be to the Evidence Code unless otherwise specified.

*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see also *People v. Roehler* (1985) 167 Cal.App.3d 353, 361 ["a jury verdict in a criminal case is presumed to be correct on appeal from the judgment of conviction"].)

Furthermore, "[i]t is axiomatic that it is the burden of the appellant to provide an adequate record to permit review of a claimed error, and failure to do so may be deemed a waiver of the issue on appeal." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1385, citing *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

Here, Allen has failed to meet her burden of providing an adequate record for appellate review of her claim of evidentiary error. As Allen acknowledges, the sidebar conference at which the alleged prior domestic violence incident was discussed was unreported; and, if her defense counsel made a specific offer of proof regarding the incident, it does not appear in the record. Allen claims the excluded evidence of Larry's alleged prior domestic violence toward her was relevant to issues of self-defense and credibility, but the court's exclusion of the evidence on relevance grounds cannot be reviewed on appeal for an abuse of discretion without a specific offer of proof as to the specific nature of the alleged incident and who did what to whom and under what circumstances. (See *Foss*, *supra*, 155 Cal.App.4th at pp. 126-128.)

Allen also claims the court erred in failing to conduct an analysis under section 352 and asserts that, if it had done so, it "would have found [the] evidence of the November, 2010 incident was more probative than prejudicial." However, without a record of a specific defense offer of proof that would permit appellate review of the

10

threshold issues of relevance and probative value, Allen cannot show, and has not demonstrated, an abuse of discretion under section 352.

For the foregoing reasons, we conclude Allen's claim of evidentiary error is forfeited. (*Foss*, *supra*, 155 Cal. App.4th at pp. 126-128; *People v. Akins*, *supra*, 128 Cal.App.4th at p. 1385.)

II. *ADMISSION OF EVIDENCE OF ALLEN'S PRIOR FELONY CONVICTION*

Allen also contends the court prejudicially abused its discretion in admitting evidence of her 2000 prior felony conviction of unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a)) We reject this contention.

A. *Background*

Allen brought a motion in limine to exclude evidence of her prior October 2000 conviction of unlawful driving or taking of vehicle without the owner's consent in violation of Vehicle Code section 10851, subdivision (a), claiming she was young when she pleaded guilty to that offense, her prior conviction was more than 11 years old, and the evidence should be excluded under Evidence Code section 352.

The prosecution brought a related motion in limine to admit evidence of Allen's prior conviction for impeachment purposes.

At the hearing on the motions, the prosecutor argued that Allen's prior offense of unlawfully taking and driving a vehicle was a crime of moral turpitude that would "reflect[] directly upon [Allen's] credibility" in the event she chose to testify at trial. The prosecutor also argued that Allen's 2000 conviction for this prior offense was not too remote in time.

11

Defense counsel argued that Allen was 24 years of age when she committed the prior offense, her 11-year-old conviction for that offense did not "speak to [her] credibility," admission of evidence of that conviction would only serve to "soil her character", and, thus, it should be excluded under section 352 because its prejudicial effect outweighed its probative value. Allen's counsel noted that she pleaded guilty to the prior offense in October 2000 and was released on probation in early November of that year. Her counsel also asserted: "It is not grand theft auto. It is less than that. . . . [¶] . . . [Allen] didn't spend very much time in jail. To me that indicates that the judge who sentenced her felt that this was a minor crime, not something very serious. And that's a factor that the court can consider."

Stating that it "ha[d] conducted a [section] 352 analysis," the court denied Allen's in limine motion and granted the People's motion to admit evidence of her prior conviction, finding that "for purposes of impeachment," the evidence of that conviction was "more probative than prejudicial." The court explained the reasons for its rulings:

> "[H]aving heard the arguments, the court has conducted a [section] 352 analysis and finds that the court cannot consider just the age of the conviction alone. [O]ther factors need to be considered. [T]he People aptly pointed out those other factors [such] as [Allen] still being on probation and also at warrant[.] [T]he court recognizes also that [Allen] does not have an entitlement to the false aura of veracity.

> "So while the conviction is a 10- or 11-year-old conviction, the relevance of it and the appropriateness of it to the credibility of the defendant is such that the court finds it would be more probative than prejudicial. There are no facts of that conviction similar to the facts in this case that would cause any confusion or unduly prejudice defendant. In fact, in granting [the People's motion], the Court is ordering the People not to discuss the facts of the case leading to the

12

conviction and also not to mention [Allen's] probationary status of that case.

"So having engaged in the [section] 352 analysis, the Court finds for purposes of impeachment it would be more probative than prejudicial. And that motion is granted. [¶] . . . [¶] [Allen's] motion to exclude evidence of [her] prior conviction is in line with the People's motion in limine [and,] consistent with the Court's ruling on the People's motion, the defense motion . . . is denied and for the same reasons stated previously."

At trial, Allen testified in her own defense, and her counsel on direct examination elicited her admission that she pleaded guilty in October 2000 to a felony charge of taking another person's car without permission.

After defense counsel presented his closing argument, the prosecutor argued to the jury that it had heard two versions of what happened in this case, and "[s]omebody lied to you." Addressing the issue of Allen's credibility, the prosecutor stated, "She is a convicted felon. She is the one charged." Defense counsel objected, "Improper argument." The court overruled the objection.

B. *Applicable Legal Principles*

The California Constitution provides: "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment . . . in any criminal proceeding. . . ."[4] (Cal. Const., art. I, § 28, subd. (f).)

---

[4] Similarly, section 788 provides: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness . . . that he has been convicted of a felony . . . ."

13

The California Supreme Court has explained that this constitutional provision means that "any felony conviction which necessarily involves moral turpitude" may be used to impeach a witness in a criminal proceeding, "even if the immoral trait is one other than dishonesty," subject to the trial court's discretion under section 352. (*People v. Castro* (1985) 38 Cal.3d 301, 306.)[5]

"When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).)

1. *Standard of review*

In reviewing on appeal a trial court's decision to allow impeachment of a witness with a prior felony conviction involving moral turpitude, we apply the abuse of discretion standard. (*Clark*, *supra*, 52 Cal.4th at p. 932.) A sentencing court abuses its discretion "when its determination is arbitrary or capricious or ""exceeds the bounds of reason, all of the circumstances being considered."""" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

---

[5]    Section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

14

"Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion."  (*Clark*, *supra*, 52 Cal.4th at p. 932.)

C.  *Analysis*

In challenging the court's decision to admit evidence of her 2000 prior felony conviction of unlawfully driving or taking a vehicle,  Allen states, as she must, that she "acknowledges that courts have classified convictions for violating Vehicle Code section 10851 within the ambit of crimes of moral turpitude."  (See *People v. Lang* (1989) 49 Cal.3d 991, 1011 ["unlawful driving or taking of a motor vehicle (Veh. Code, § 10851)[ is] a California offense uniformly held to involve moral turpitude"], citing *People v. Rodriguez* (1986) 177 Cal.App.3d 174, 178.)

Allen contends the court abused its discretion by failing to conduct a "full analysis" under section 352 before ruling that evidence of her 2000 prior felony conviction was admissible as impeachment evidence.  We reject this contention because the record demonstrates the court properly conducted a section 352 balancing analysis before allowing Allen's impeachment with her admission that she had suffered the subject 2000 felony conviction.  At the hearing on the parties' in limine motions, the court noted it had discussed those motions in chambers with both counsel.  The court considered the various factors outlined in *Clark*, *supra*, 52 Cal.4th at page 931 (discussed, *ante*). Specifically, the court heard and considered defense counsel's arguments during the hearing that Allen's prior conviction did not "really speak to her credibility in a way that

15

will give the jury more information about whether or not she is credible" and that admission of evidence of that conviction would only serve to "soil her character." The court considered the remoteness in time of Allen's 2000 prior conviction, expressly noting it was "a 10- or 11-year-old conviction." With respect to whether Allen's prior felony offense was for the same or similar conduct as the current charged offenses, the court specifically found that "[t]here are no facts of that conviction similar to the facts in this case that would cause any confusion or unduly prejudice defendant." To mitigate any potential prejudice, the court admonished the prosecutor "not to discuss the facts of the case leading to the conviction and also not to mention [Allen's] probationary status of that case." Also, with respect to the effect the admission of the prior conviction evidence would have on Allen's decision to testify at trial, the record shows it had no adverse effect as shown by the fact that Allen testified in her own defense.

In addition to considering the various *Clark* factors, the court indicated it had considered Allen's age when she committed the prior felony. Furthermore, as noted, in ruling that evidence of Allen's prior conviction was admissible as impeachment evidence, the court expressly stated that, "having engaged in the [section] 352 analysis, the Court finds for purposes of impeachment it would be more probative than prejudicial."

For all of the foregoing reasons, we conclude Allen has failed to meet her burden of showing that the court's ruling was arbitrary or capricious or exceeds the bounds of reason, all of the circumstances being considered. (See *People v. Carbajal*, *supra*, 10 Cal.4th at p. 1121.) Accordingly, we reject her contention the court abused its discretion

16

by failing to conduct a "full analysis" under section 352 before ruling that evidence of her 2000 prior felony conviction was admissible as impeachment evidence.

### III. *CLAIM OF PROSECUTORIAL MISCONDUCT*

Allen next contends the prosecutor committed prejudicial misconduct by impermissibly vouching for the veracity of the complaining witness, Larry, and characterizing Allen as a liar. We reject this contention.

A. *Background*

During her rebuttal argument, the prosecutor stated:

> "Ladies and gentlemen, one of two things happened here. You have heard two versions. Somebody lied to you.
>
> "On the one hand, [Larry] tells you, I was trying to leave, and my wife attacked me with scissors. After I got stabbed in the shoulder the first time, I put her in a bear hug, not hurting her, but I disarmed her and left.
>
> "In court [Allen] takes the stand. She says, No, no, it wasn't in the bedroom. It was in the garage. And he came after me. And I was simply trying to defend myself against getting hurt by my husband.
>
> "Well, they both can't be right. He did get stabbed with the scissors. The question is how.
>
> "So, first, who is lying? It is a credibility determination. Either [Larry] lied to you or [Allen] did. They cannot both be telling the truth. There is no middle ground. There is no gray area."

The prosecutor discussed various portions of Larry's testimony and addressed his credibility. The prosecutor then told the jury, "No lies there. . . . Not one single lie. All that. Nothing."

17

The prosecutor then stated:

> "On the other hand, [Allen], her credibility. She is a convicted felon. She is the one charged."

Defense counsel objected this was an improper argument, and the court overruled the objection.

The prosecutor continued to discuss how Allen's version of the stabbing incident was inconsistent with the photographic evidence, and then stated:

> "Now, proof beyond a reasonable doubt that it wasn't self-defense. Well, first, I just gave you four reasons why she shouldn't be believed at all that it was self-defense."

Defense counsel objected to this argument on the ground it was "burden shifting," and the court sustained the objection. However, Allen's counsel did not ask for a curative jury admonition.

B. *Applicable Legal Principles*

A prosecutor in a criminal case can commit misconduct under either federal or state law. "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

A prosecutor commits misconduct by improperly vouching for the credibility of a witness. The California Supreme Court has explained that "[a] prosecutor is prohibited

18

from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. [Citations.] Nor is a prosecutor permitted to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial." (*People v. Frye* (1998) 18 Cal.4th 894, 971, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

To preserve a claim of prosecutorial misconduct for appeal, a defendant must object in a timely fashion *on that ground* and request a curative jury admonition unless an admonition would not have cured the harm caused by the misconduct. (*People v. Hinton* (2006) 37 Cal.4th 839, 863 (*Hinton*); see also *People v. Crew* (2003) 31 Cal.4th 822, 839 (*Crew*) ["[A] claim of prosecutorial misconduct is not preserved for appeal if defendant fails to object and seek an admonition if an objection and jury admonition would have cured the injury."].)

C. *Analysis*

In support of her claim of prosecutorial misconduct, Allen complains that during closing argument, "the prosecutor went beyond permissible argument to essentially assure the jurors that his witness (Larry) was honest and that [Allen], because she had a prior conviction, was a liar."

The Attorney General asserts Allen's claims of improper vouching and improper characterization of her as a liar are forfeited. We agree. Although Allen raised a generalized objection that the prosecutor's comments about Larry's testimony and credibility were "improper," she did not raise a vouching objection, nor did she raise a

19

specific objection that the prosecutor was mischaracterizing her as a liar due to her prior conviction. Because Allen did not object to the prosecutor's allegedly improper closing arguments on these grounds, her claims are forfeited. (*Hinton*, *supra*, 37 Cal.4th at p. 863; *Crew*, *supra*, 31 Cal.4th at p. 839.)

These claims, like Allen's claim that the prosecutor engaged in an impermissible attempt "to shift the burden of proof to undercut [her] self-defense arguments," are also forfeited on appeal because the record shows she did not request a curative jury admonition as to any of these claims, and she makes no argument that an admonition would not have cured the harm caused by the claimed misconduct. (*Hinton*, *supra*, 37 Cal.4th at p. 863; *Crew*, *supra*, 31 Cal.4th at p. 839.)

## IV. *CUMULATIVE ERROR CLAIM*

Allen claims the foregoing trial errors, considered together, denied her her due process right to a fair trial. We reject this claim, as we have concluded the court did not commit evidentiary error, and Allen has forfeited her claims of prosecutorial misconduct.

## V. *DENIAL OF PROBATION*

Last, Allen claims the court abused its discretion by denying her request for probation. We reject her claim.

A. *Background*

At the sentencing hearing, the court indicated it had read and considered the probation officer's report and Allen's combined statement in support of probation and statement in mitigation.

20

The probation report recommended that Allen be denied probation and sentenced to a prison term of three years eight months. The report detailed an interview the probation officer had with Allen in which she stated she had been drinking and was intoxicated during the offenses. She admitted she damaged Larry's electronics and motorcycle, but she gave no explanation as to why she did it. Despite the verdict, she indicated she stabbed Larry in self-defense. Allen expressed a willingness to abide by the terms of probation but indicated she did not want to participate in the 52-week DVRP (Domestic Violence Recovery Program).

The probation report indicated that Allen's criminal history included a 2000 conviction for auto theft, for which she was granted formal probation. Her probation was revoked twice.

The probation report listed one mitigating circumstance: Allen's sole prior conviction occurred more than 11 years earlier (Cal. Rules of Court, rule 4.423(b)(l)).[6] However, it listed two aggravating circumstances: (1) the current crime involved the threat of great bodily harm, as well as a high degree of callousness in that it spanned several days (rule 4.421(a)(l)); and (2) Allen's prior performance on probation was unsatisfactory in that, at the time she committed the current offense, she had an outstanding warrant for her arrest in another case that had been issued over 10 years earlier (rule 4.421(b)(5)).

---

[6]     All further rule references are to the California Rules of Court.

The report indicated the probation officer had conducted a Spousal Assault Risk Assessment (SARA) under Penal Code section 1203.097, which indicated the following risk predictors for Allen:

> "[P]ast assault of family members; past assault of strangers or acquaintances; past violation of conditional release or community supervision; recent relationship problems; victim or witness of family violence as a child or adolescent; past spousal assault; recent escalation in frequency or severity of assault; extreme minimization or denial of spousal assault history; severity of instant offense and use of weapon in instant offense."

Allen's SARA score placed her in the high-risk category.

With respect to the issue of probation eligibility, the probation report listed the following three factors supporting the granting of probation: (1) Allen had an insignificant prior criminal record as her last felony conviction occurred more than 11 years earlier (rule 4.414(b)(1)); (2) she appeared willing to comply with the terms of probation (rule 4.414(b)(3)); and (3) imprisonment could have a negative effect on her and her child (rule 4.414(b)(5)).

However, the report listed the following seven factors supporting the denial of probation: (1) Allen used a weapon in committing the current offense (rule 4.414(a)(2)); (2) she inflicted physical injury on the victim (rule 4.414(a)(4)); (3) the victim suffered substantial monetary loss (rule 4.414(a)(5)); (4) Allen's prior performance on probation was unsatisfactory as she had an outstanding warrant for her arrest at the time of the offense (rule 4.414(b)(2)); (5) she lacks the ability to comply with reasonable terms of probation due to her lack of education, mental health problems, and lack of ties to the

22

community (rule 4.414(b)(4)); (6) she appears to lack remorse (rule 4.414(b)(7)); and (7) she will likely be a danger to others if not imprisoned (rule 4.414(b)(8)).

At the sentencing hearing, defense counsel argued that Allen deserved "at least one chance" on probation due to her bipolar disorder diagnosis, history of childhood abuse, and minimal education. Counsel stated that Allen was now taking her medication. Allen's counsel also argued the court should not rely on the SARA analysis because the assessment is designed for male, not female, offenders, and the assessment is only utilized after formal probation has been granted. Counsel argued that Allen's minimal risk of recidivism also supported probation and—as Allen and Larry have divorced, Larry has moved away, and they did not have children together—her offenses were a "situational event." Counsel told the court that Allen "has no history of violence." Despite Allen's statements to probation that she did not wish to participate in DVRP treatment, counsel asked the court to impose such treatment if it granted probation.

Allen then addressed the court and apologized. She blamed her actions on her failure to take her medications and stated she was now taking her medications. She expressed concern for her son and said being away from him would be a detriment to him.

The prosecutor argued for the recommended prison term due to the unusual level of violence involved in the crimes and the destruction of Larry's property. The prosecutor expressed concern that Allen did not admit her offenses or state she was remorseful, and argued she was not suitable for probation as she had previously failed to comply with the terms of probation and had indicated she did not wish to comply with the

23

DVRP treatment requirement. Although Larry was not present at the sentencing hearing, the prosecutor indicated Larry feared Allen would try to get revenge.

*Ruling*

The court ruled that Allen was not eligible for probation, finding that "the circumstances supporting denial far outweigh[ed] the circumstances supporting the grant of probation." Specifically, the court indicated it had considered defense counsel's arguments, the mitigating and aggravating factors, Allen's minimal prior criminal conduct, her upbringing, and her concerns about her son. The court agreed with Allen that the SARA tool is designed to assess men, not women, but stated the SARA analysis was not a controlling factor in its determination. The court found that Allen's offenses involved an unusual amount of violence, and, although she claimed she was remorseful, the probation report indicated she was not. The court expressed concern about the statement in the probation report indicating Allen appeared to be willing to comply with the terms of probation if granted. The court indicated that Allen's prior probation performance, the outstanding warrant for her arrest, and her unwillingness to participate in DVRP treatment "raise[d] questions as to her amenability to complying with the terms and conditions of probation." The court found there were no unusual circumstances to support the grant of probation.

The court then sentenced Allen to the lower prison term of two years for her corporal injury to her spouse conviction (Pen. Code, § 273.5, subd. (a)), plus an additional one year for the weapon enhancement, plus a consecutive eight-month term

(one-third the middle term) for her vandalism conviction, for an aggregate prison term of three years eight months.

C. *Applicable Legal Principles*

"All defendants are eligible for probation, in the discretion of the sentencing court [citation], unless a statute provides otherwise." (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) "The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion." (*Ibid.*)

In reviewing a trial court's decision to grant or deny probation, "it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances." (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 825.)

Rule 4.414, which sets forth certain criteria relevant to the trial court's decision to grant or deny probation, provides:

> "Criteria affecting the decision to grant or deny probation include facts relating to the crime and facts relating to the defendant.
>
> "(a) **Facts relating to the crime** Facts relating to the crime include:
>
> "(1) The nature, seriousness, and circumstances of the crime as compared to other instances of the same crime;
>
> "(2) Whether the defendant was armed with or used a weapon; [¶] . . .
>
> "(4) Whether the defendant inflicted physical or emotional injury; [and]

25

"(5) The degree of monetary loss to the victim[.]  [¶] . . .

"(b) **Facts relating to the defendant**  Facts relating to the defendant include:

"(1) Prior record of criminal conduct, whether as an adult or a juvenile, including the recency and frequency of prior crimes; and whether the prior record indicates a pattern of regular or increasingly serious criminal conduct;

"(2) Prior performance on probation or parole and present probation or parole status;

"(3) Willingness to comply with the terms of probation;

"(4) Ability to comply with reasonable terms of probation as indicated by the defendant's age, education, health, mental faculties, history of alcohol or other substance abuse, family background and ties, employment and military service history, and other relevant factors;

"(5) The likely effect of imprisonment on the defendant and his or her dependents; [¶] . . .

"(7) Whether the defendant is remorseful; and

"(8) The likelihood that if not imprisoned the defendant will be a danger to others."

"In deciding whether to grant or deny probation, a trial court may also consider additional criteria not listed in the rules provided those criteria are reasonably related to that decision.  (Rule 4.408(a).)  A trial court is generally required to state its reasons for denying probation and imposing a prison sentence, including any additional reasons considered pursuant to rule 4.408.  (Rules 4.406(b)(2) & 4.408(a).)  Unless the record affirmatively shows otherwise, a trial court is deemed to have considered all relevant criteria in deciding whether to grant or deny probation or in making any other

discretionary sentencing choice. (Rule 4.409.) [¶] . . . [I]n determining whether a trial court abused its discretion by denying probation, we consider, in part, whether there is sufficient, or substantial, evidence to support the court's finding that a particular factor was applicable." (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1313.)

D. *Analysis*

Allen contends the court abused its discretion by denying her request for probation because (1) the court's reliance on the probation report alone reflects a failure to consider numerous factors that warrant a grant of probation; and (2) the court's reliance on probation report recommendations that considered a SARA analysis was an abuse of discretion.

With respect to her first contention, Allen complains that the court "did not fully consider" a number of factors and states she met a number of criteria showing hers was an "unusual" case within the meaning of Penal Code section 1203[7] and rule 4.413(c).[8]

_____

[7] Subdivision (e) of Penal Code section 1203 lists 13 categories of persons to whom probation "shall not be granted" except "in unusual cases where the interests of justice would best be served if the person is granted probation."

[8] Rule 4.413(c) provides: "The following facts may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate: [¶] (1) *Facts relating to basis for limitation on probation* [¶] A fact or circumstance indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including: [¶] (A) The fact or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; and [¶] (B) The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense. [¶] (2) *Facts*

27

Specifically, she asserts (1) "the circumstances giving rise to the limitation on probation were substantially less serious than circumstances in other cases of the same charge" because "she had been consuming alcohol, was responding to an emotionally charged interaction, involving mutual and prolonged arguments regarding the end of a five year marriage, with physical conflict interspersed with make up sex by both parties," and she "had no prior record of committing any crimes of violence"; (2) "[her] crime was committed in part due to [her] mental condition not amounting to a defense" because she "suffers from bi-polar disorder, and likely misjudged her environment such that she overreacted to the situation," and "[t]here is evidence that she may not have been taking her medication at the time of the incidents"; and (3) she is 36 years old and has no prior convictions for violence and does not have a significant record of prior criminal offenses.

Allen also asserts that a number of other factors not delineated in the probation report supported a grant of probation, including (1) Larry did not seek medical attention; (2) Larry was not a vulnerable victim and suffered no emotional injury; (3) her crime "was committed due to unusual circumstances and is not likely to re-occur" because "the parties were vacillating between arguing and make-up sex," they were "facing issues of infidelity and divorce," and they "are now divorced, living apart, and have no contact";

*limiting defendant's culpability* [¶] A fact or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including:  [¶] . . . [¶] (B) The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation; and [¶] (C) The defendant is youthful or aged, and has no significant record of prior criminal offenses."

and (3) the manner in which she committed her crimes did not demonstrate criminal sophistication.

Allen's contention and supporting assertions are unavailing. The record shows the court did consider most of the factors Allen now claims it failed to fully consider. For example, she complains the court did not fully consider that she had been consuming alcohol and was responding to an emotionally charged interaction with Larry. However, in detailing the probation officer's interview of Allen, the probation report—which the court considered—reported her statement that she had been drinking and was intoxicated during her commission of the offenses; and her counsel, in arguing at sentencing that Allen deserved "at least one chance" on probation, twice argued she had committed her offenses in an emotionally charged "situational event," noting that she and Larry were "having some fidelity issues."

Allen complains the court did not fully consider that she had no prior record of commiting crimes of violence, but her counsel specifically told the court at sentencing that Allen "has no history of violence," and the probation report indicated she had no such history.

Allen complains the court did not fully consider that she committed her crimes in part due to a mental condition because she suffers from bipolar disorder, and "she may not have been taking her medication at the time of the incidents." However, her counsel at sentencing specifically addressed her "mental health issues" and argued that "[Allen] has been diagnosed with bipolar, and she is now on medication." In fact, as the probation

29

report specifically noted, Allen was diagnosed with bipolar disorder in 2005, many years before she committed her offenses against Larry in 2011.

Allen also complains that the probation report did not address the fact that she and Larry are now divorced, living apart, and have no contact. However, Allen's counsel at sentencing specifically argued, "[Larry] has divorced [her]. He has moved away. And they are not going to see each other anymore. They don't share a child. There is no reason for them to have any contact."

Allen also complains that the probation report did not cite Allen's lack of criminal sophistication as a factor supporting the granting of probation. However, based on the record before the court, Allen's lack of criminal sophistication was evident.

Allen's second contention—that the court's reliance on probation report recommendations that considered a SARA analysis was an abuse of discretion—is also unavailing. The court agreed with defense counsel that the SARA assessment tool is designed to assess men, not women; and specifically stated that the SARA analysis in this case was "not a controlling factor" in making its determination to deny Allen probation.

Based on our review of the record, we conclude the trial court did not abuse its discretion by denying Allen probation. The court reviewed and considered the probation report, and heard and considered both Allen's statement to the court and her counsel's thorough arguments on the issue of probation. The court considered various relevant rule 4.414 criteria in support of granting and denying probation, it expressly weighed those criteria in exercising its discretion to deny her probation, and nothing in the court's decisionmaking process shows the court misunderstood its discretion to weigh relevant

30

criteria in making that decision. Although the court did not specifically cite rule 4.413 (see fn. 7, *ante*), it determined there were no "unusual circumstances to support the grant of probation."

Substantial evidence supports the court's finding that Allen should be denied probation because her offenses involved an unusual level of violence,, she failed to demonstrate remorse, and her prior performance on probation and her unwillingness to participate in DVRP treatment "raise questions as to her amenability to complying with the terms and conditions of probation," We cannot conclude the court acted in an arbitrary, capricious, or unreasonable manner in finding the circumstances supporting denial of probation far outweigh the circumstances supporting a grant of probation. Rather, we conclude the court's decision was within the reasonable exercise of its discretion. On appeal "it is not our function to substitute our judgment for that of the trial court" (*People v. Superior Court (Du)*, *supra*, 5 Cal.App.4th at p. 825); but that, in effect, is what Allen suggests we do. For all of the above reasons, we affirm the court's decision to deny Allen probation.

DISPOSITION

The judgment is affirmed.  In light of inconsistencies in the record, the matter is remanded to the trial court to verify defendant's true name and, if necessary, to correct the abstract of judgment in that regard.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.